## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| CODY BELLENIR, Individually and for Others Similarly Situated<br><br>v.<br><br>THE MEDILODGE GROUP, INC. | **Case No.**  2:24-cv-10153<br><br>Jury Trial Demanded<br><br>FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Cody Bellenir ("Bellenir") brings this collective action to recover unpaid overtime wages and other damages from The Medilodge Group, Inc. ("Medilodge").

2.      Medilodge employed Bellenir as one of its Patient Care Employees (defined below) in Michigan.

3.      Medilodge paid Bellenir and its other Patient Care Employees on an hourly basis.

4.      Bellenir and the other Patient Care Employees regularly worked more than 40 hours a week.

5.      But Medilodge did not pay Bellenir and its other Patient Care Employees for all their hours worked.

6.      Instead, Medilodge automatically deducted 30 minutes a day from Bellenir's and its other Patient Care Employees' recorded work time for so-called "meal

breaks," regardless of whether they actually received a *bona fide* meal break (Medilodge's "auto-deduct policy").

7.      Thus, Medilodge did not pay Bellenir and the other Patient Care Employees for that time.

8.      But Bellenir and the other Patient Care Employees did not actually receive *bona fide* meal breaks.

9.      Instead, Medilodge required Bellenir and its other Patient Care Employees to remain on-duty and perform compensable work throughout their shifts, and Medilodge continuously subjected them to work interruptions during their unpaid "meal breaks."

10.      Medilodge's uniform auto-deduct policy violates the Fair Labor Standards Act ("FLSA") by depriving Bellenir and the other Patient Care Employees of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

11.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.      This Court has general personal jurisdiction over Medilodge because Medilodge is a domestic corporation.

13.      Venue is proper because Medilodge is headquartered in Washington, Michigan, which is in this District and Division. 28 U.S.C. § 1391(b)(2).

## PARTIES

14. Bellenir worked for Medilodge as a Licensed Practical Nurse ("LPN") from approximately June 2018 through mid-2019 and then as a Registered Nurse ("RN") until April 2023 at Medilodge healthcare facilities in Alpena and Gaylord, Michigan.

15. Throughout his employment, Medilodge classified Bellenir as non-exempt and paid him on an hourly basis.

16. Throughout his employment, Medilodge subjected Bellenir to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

17. But throughout his employment, Bellenir did not actually receive *bona fide* meal breaks.

18. Bellenir's written consent is attached as **Exhibit 1**.

19. Bellenir brings this collective action on behalf of himself and other similarly situated hourly, non-exempt Medilodge patient care employees who were subject to Medilodge's auto-deduct policy.

20. Medilodge automatically deducts 30 minutes a day from each of these Patient Care Employees' recorded work time for so-called "meal breaks."

21. But these Patient Care Employees do not actually receive *bona fide* meal breaks.

22.     Thus, Medilodge uniformly deprives these Patient Care Employees of overtime wages for all overtime hours worked in willful violation of the FLSA.

23.     The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt Medilodge employees who received a meal period deduction at any time during the past 3 years (the "Patient Care Employees").**[1]

24.     Medilodge is a Michigan corporation headquartered in Washington, Michigan.

25.     Medilodge may be served through its registered agent: **Frank M. Wronski, 10503 Citation Drive, Suite 100, Brighton, Michigan 48116**, or wherever he may be found.

## FLSA COVERAGE

26.     At all relevant times, Medilodge was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

27.     At all relevant times, Medilodge was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

28.     At all relevant times, Medilodge was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Medilodge, had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

---

[1] The Patient Care Employees expressly excludes any employees who opted into *Witte v. The Medilodge Group, Inc.*, No. 1:23-CV-10461 (E.D. Mich.).

or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

29.     At all relevant times, Medilodge has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

30.     At all relevant times, Bellenir and the Patient Care Employees were Medilodge's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

31.     At all relevant times, Bellenir and the Patient Care Employees were engaged in commerce or in the production of goods for commerce.

32.     Medilodge deducted 30 minutes a day from Bellenir's and the other Patient Care Employees' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

33.     As a result, Medilodge failed to pay Bellenir and the other Patient Care Employees wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

34.     Medilodge's auto-deduct policy, therefore, violates the FLSA by depriving Bellenir and the other Patient Care Employees of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

35.     Medilodge bills itself as "a leading provider of long-term skilled nursing care and short-term rehabilitation services."[2]

36.     To meet its business objectives, Medilodge hires healthcare workers, like Bellenir and the other Patient Care Employees, to work in its various healthcare facilities throughout Michigan.[3]

37.     Medilodge uniformly classifies these employees (including Bellenir and its other Patient Care Employees) as non-exempt and pays them on an hourly basis.

38.     While exact job titles and precise job duties may differ, Bellenir and the other Patient Care Employees are all subject to Medilodge's same or similar illegal policies—Medilodge's auto-deduct policy—for similar work.

39.     For example, Bellenir worked for Medilodge as an LPN from approximately June 2018 through mid-2019 and then as an RN until April 2023 at Medilodge healthcare facilities in Alpena and Gaylord, Michigan.

40.     As an LPN and RN, Bellenir's primary responsibilities included providing direct patient care, such as monitoring patients, checking vital signs, charting treatments, conducting initial patient assessments, administering medications and vaccines, responding to emergencies, and generally assisting doctors and other nursing

---

[2] https://medilodge.com/ (last visited January 19, 2024).
[3] *See* https://medilodge.com/locations/ (identifying all Medilodge locations) (last visited January 19, 2024).

staff in accordance with Medilodge's uniform policies, procedures, standards, and code of conduct.

41.     Throughout his employment, Medilodge classified Bellenir as non-exempt and paid him on an hourly basis.

42.     Throughout his employment, Medilodge required Bellenir to report his hours worked to Medilodge through its uniform timekeeping system (Kronos).

43.     Thus, Medilodge's records reflect the hours Bellenir worked each workweek.

44.     Indeed, throughout his employment, Bellenir typically worked 12-hour shifts for at least 5 to 6 days a workweek (or at least 60 to 72 hours a workweek).

45.     But throughout his employment, Medilodge did not pay Bellenir for all his hours worked.

46.     Instead, throughout his employment, Medilodge subjected Bellenir to its uniform, illegal auto-deduct policy.

47.     Specifically, Medilodge automatically deducted 30 minutes a day from Bellenir's recorded work time for so-called "meal breaks" regardless of whether he actually received a *bona fide* meal break.

48.     Thus, Medilodge did not pay Bellenir for that time.

49.     But throughout his employment, Bellenir did not actually receive *bona fide* meal breaks.

50.     Instead, Bellenir was forced to regularly perform compensable work throughout his shifts (including during his so-called "meal breaks").

51.     Thus, as a result of its illegal auto-deduct policy, Medilodge failed to pay Bellenir overtime wages for all his overtime hours worked in willful violation of the FLSA.

52.     Bellenir and the other Patient Care Employees perform their jobs under Medilodge's supervision and use materials, equipment, and technology Medilodge approves and supplies.

53.     Medilodge requires Bellenir and its other Patient Care Employees to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

54.     At the end of each pay period, Bellenir and the other Patient Care Employees receive wages from Medilodge that are determined by common systems and methods that Medilodge selects and controls.

55.     Medilodge requires Bellenir and its other Patient Care Employees to record their hours worked using Medilodge's uniform timeclock system (Kronos).

56.     Thus, just as Medilodge's records reflect the number of hours Bellenir worked each workweek, Medilodge also has records of the number of hours the other Patient Care Employees worked each workweek.

57.     But, like Bellenir, Medilodge fails to pay its other Patient Care Employees for all their hours worked.

8

58.     Indeed, Medilodge uniformly subjects its other Patient Care Employees to the same illegal auto-deduct policy it imposed on Bellenir.

59.     Specifically, just as with Bellenir, Medilodge automatically deducts 30 minutes a day from its other Patient Care Employees' recorded work time for so-called "meal breaks."

60.     Medilodge automatically deducts this time regardless of whether Bellenir and the other Patient Care Employees actually receive full, uninterrupted, 30-minute meal breaks.

61.     Medilodge simply assumes Bellenir and its other Patient Care Employees receive *bona fide* meal breaks each shift they work.

62.     But, like Bellenir, the other Patient Care Employees do not actually receive *bona fide* meal breaks.

63.     Instead, like Bellenir, Medilodge requires its other Patient Care Employees to remain on-duty and perform compensable work throughout their shifts, including during their unpaid "meal breaks."

64.     And, like Bellenir, Medilodge continuously subjects its other Patient Care Employees to work interruptions during their unpaid "meal breaks."

65.     Because of these constant work interruptions, Bellenir and the other Patient Care Employees are not free to engage in personal activities during their unpaid "meal breaks."

66.    In other words, Bellenir and the other Patient Care Employees are not relieved of all their patient care duties during their unpaid "meal breaks."

67.    Rather, during their unpaid "meal breaks," Bellenir and the other Patient Care Employees are forced to remain on-duty and perform their regular patient care duties and responsibilities.

68.    Thus, Bellenir and the other Patient Care Employees routinely spend their unpaid "meal breaks" performing work for Medilodge's—not their own—predominant benefit.

69.    This unpaid time is compensable under the FLSA because Medilodge knew, or should have known: (1) Bellenir and its other Patient Care Employees were performing unpaid work during their "meal breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted meal break; (3) they were not completely relieved of all duties during their unpaid "meal breaks"; (4) they entirely skipped their meal breaks due to work demands; (5) their unpaid meal breaks were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their unpaid meal breaks because of constant work interruptions; (7) they remained on Medilodge's premises or under Medilodge's supervision during their unpaid meal breaks; and/or (8) they spent their unpaid meal breaks performing their regular patient care duties for Medilodge's predominant benefit.

70.     Medilodge fails to exercise its duty as Bellenir's and the other Patient Care Employees' employer to ensure these employees are not performing work that Medilodge does not want performed during their unpaid "meal breaks."

71.     And Medilodge knows, should know, or recklessly disregards whether Bellenir and its other Patient Care Employees routinely perform work during their unpaid meal breaks.

72.     Thus, Medilodge requested, suffered, permitted, or allowed Bellenir and its other Patient Care Employees to work during their unpaid "meal breaks."

73.     Despite accepting the benefits, Medilodge does not pay Bellenir and its other Patient Care Employees for the compensable work they perform during their "meal breaks."

74.     Thus, under Medilodge's uniform, illegal auto-deduct policy, Bellenir and the other Patient Care Employees are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in willful violation of the FLSA.

75.     Like Bellenir, each Patient Care Employee worked more than 40 hours in at least one workweek during the relevant period.

76.     Indeed, like Bellenir, the other Patient Care Employees typically work 12-hour shifts for at least 5 to 6 days a workweek (or 60 to 72+ hours a workweek).

77.     And Bellenir and the other Patient Care Employees were also regularly required to work "off the clock" during their unpaid "meal breaks" to complete their patient care duties and responsibilities for Medilodge's predominate benefit.

78.     As a result, Bellenir and the other Patient Care Employees routinely worked more than 40 hours in a typical workweek throughout the relevant period.

79.     When Bellenir and the other Patient Care Employees worked more than 40 hours in a workweek, Medilodge did not pay them overtime wages for all overtime hours worked because Medilodge failed to include time these employees worked "off the clock" during their unpaid meal breaks in their total number of hours worked in a given workweek in willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

80.     Bellenir incorporates all other paragraphs by reference.

81.     Like Bellenir, the other Patient Care Employees were victimized by Medilodge's auto-deduct policy.

82.     Other Patient Care Employees worked with Bellenir and indicated they were paid in the same manner, performed similar work, and were subject to Medilodge's same illegal auto-deduct policy.

83.     Based on his experience with Medilodge, Bellenir is aware Medilodge's illegal auto-deduct policy was imposed on the other Patient Care Employees.

84.     The Patient Care Employees are similarly situated in the most relevant respects.

85.     Even if their precise job duties might vary, these differences do not matter for the purposes of determining their entitlement to overtime wages for all hours worked over 40 in a workweek.

86.     Therefore, the specific job titles of the various Patient Care Employees do not prevent collective treatment.

87.     Rather, the putative collective of Patient Care Employees is held together by Medilodge's uniform, illegal auto-deduct policy, which systematically deprived Bellenir and the Patient Care Employees of overtime wages for all hours worked after 40 hours in a workweek.

88.     Medilodge's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Patient Care Employees.

89.     Medilodge's records reflect the number of hours the Patient Care Employees recorded they worked each week.

90.     Medilodge's records further reflect it deducted 30 minutes a day from the Patient Care Employees' recorded work time for so-called "meal breaks."

91.     The back wages owed to Bellenir and the other Patient Care Employees can therefore be calculated using the same formula applied to the same records.

92.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Medilodge's records, and there is no detraction from the common nucleus of liability facts.

93.     Therefore, the issue of damages does not preclude collective treatment.

94.     Bellenir's experiences are therefore typical of the experiences of the other Patient Care Employees.

95.     Bellenir has no interest contrary to, or in conflict with, the other Patient Care Employees.

96.     Like each Patient Care Employee, Bellenir has an interest in obtaining the unpaid wages owed to them under federal law.

97.     A collective action, such as the instant one, is superior to other available means for the fair and efficient adjudication of this lawsuit.

98.     Absent this collective action, many Patient Care Employees likely will not obtain redress for their injuries, and Medilodge will reap the unjust benefits of violating the FLSA.

99.     Further, even if some of the Patient Care Employees could afford individual litigation against Medilodge, it would be unduly burdensome to the judicial system.

100.    Indeed, the multiplicity of actions would create a hardship to the Patient Care Employees, the Court, and Medilodge.

101.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Patient Care Employees' claims.

102. Bellenir knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

103. As part of its regular business practices, Medilodge intentionally, willfully, and repeatedly violated the FLSA with respect to Bellenir and the other Patient Care Employees.

104. Medilodge's illegal auto-deduct policy deprived Bellenir and the other Patient Care Employees of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

105. There are many similarly situated Patient Care Employees who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

106. The similarly situated Patient Care Employees are known to Medilodge, are readily identifiable, and can be located through Medilodge's business and personnel records.

### MEDILODGE'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

107. Bellenir incorporates all other paragraphs by reference.

108. Medilodge knew it was subject to the FLSA's overtime provisions.

109.    Medilodge knew the FLSA required it to pay non-exempt employees, including Bellenir and the other Patient Care Employees, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

110.    Medilodge knew Bellenir and the other Patient Care Employees were non-exempt employees entitled to overtime pay.

111.    Medilodge knew it paid Bellenir and the other Patient Care Employees on an hourly basis.

112.    Medilodge knew Bellenir and the other Patient Care Employees worked over 40 hours in at least one workweek during the three years before this Complaint was filed because Medilodge required these employees to report their hours worked to Medilodge via its uniform timeclock system.

113.    Medilodge knew the FLSA required it to pay employees, including Bellenir and the other Patient Care Employees, for all hours they performed compensable work.

114.    Medilodge knew that, as Bellenir's and the other Patient Care Employees' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that Medilodge did not want performed.

115.    Medilodge knew it failed to provide Bellenir and the other Patient Care Employees with *bona fide*, uninterrupted meal breaks.

116.    Medilodge knew Bellenir and the other Patient Care Employees did not actually receive *bona fide*, uninterrupted meal breaks.

117.   Medilodge knew Bellenir and the other Patient Care Employees regularly worked during their unpaid "meal breaks."

118.   Medilodge knew Bellenir and the other Patient Care Employees regularly spent their unpaid "meal breaks" performing their regular patient care job duties for Medilodge's predominant benefit.

119.   Thus, Medilodge knew it requested, suffered, permitted, or allowed Bellenir and the other Patient Care Employees to work during their unpaid "meal breaks."

120.   In other words, Medilodge knew, should have known, or recklessly disregarded whether Bellenir and the other Patient Care Employees performed compensable work during their unpaid "meal breaks."

121.   Nonetheless, Medilodge automatically deducted 30 minutes a day from Bellenir's and the other Patient Care Employees' recorded work time for "meal breaks."

122.   In other words, Medilodge knew, should have known, or recklessly disregarded whether it did not pay Bellenir and the other Patient Care Employees for all the hours they performed compensable work.

123.   Medilodge's decision to automatically deduct 30 minutes a day from Bellenir's and the other Patient Care Employees' recorded work time for meal breaks was neither reasonable, nor was it made in good faith.

124.   Medilodge's failure to pay Bellenir and the other Patient Care Employees overtime wages for all overtime hours worked was neither reasonable, nor was its

decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

125.    Medilodge knowingly, willfully, and/or in reckless disregard carried out its illegal auto-deduct policy that deprived Bellenir and the other Patient Care Employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

126.    Medilodge knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA.

127.    Indeed, Medilodge has been sued previously by employees for failing to pay overtime wages in violation of the FLSA, including for the same illegal auto-deduct policy that is the basis of this lawsuit. *See, e.g.*, *Witte v. The Medilodge Group, Inc.*, No. 1:23-CV-10461 (E.D. Mich.).

## CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

128.    Bellenir incorporates all other paragraphs by reference.

129.    Bellenir brings his FLSA claim on behalf of himself and the other Patient Care Employees pursuant to 29 U.S.C. § 216(b).

130.    Medilodge violated, and is violating, the FLSA by employing non-exempt employees (Bellenir and the other Patient Care Employees) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including those worked during their unpaid meal breaks.

18

131.    Medilodge's unlawful conduct harmed Bellenir and the other Patient Care Employees by depriving them of the overtime wages they are owed.

132.    Accordingly, Medilodge owes Bellenir and the other Patient Care Employees the difference between the overtime wages actually paid and the proper overtime wages actually earned.

133.    Because Medilodge knew, or showed reckless disregard for whether, its auto-deduct policy violated the FLSA, Medilodge owes these wages for at least the past 3 years.

134.    Medilodge is also liable to Bellenir and the other Patient Care Employees for an additional amount equal to all unpaid wages as liquidated damages.

135.    Finally, Bellenir and the other Patient Care Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

136.    Bellenir demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Bellenir, individually and on behalf of the other Patient Care Employees, seeks the following relief:

a.    An Order designating this lawsuit as a collective action and authorizing notice to the Patient Care Employees allowing them to join this action by filing a written notice of consent;

b.      An Order finding Medilodge liable to Bellenir and the other Patient Care Employees for unpaid overtime wages, plus liquidated damages in an amount equal to their unpaid wages;

c.      A Judgment awarding Bellenir and the other Patient Care Employees all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.      An Order awarding attorneys' fees, costs, and expenses;

e.      Pre- and post-judgment interest at the highest applicable rates; and

f.      Such other and further relief as may be necessary and appropriate.

Dated: January 19, 2024.

Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Michael A. Josephson*
    Michael A. Josephson
    TX Bar No. 24014780
    Andrew W. Dunlap
    TX Bar No. 24078444
    Carl A. Fitz
    TX Bar No. 24105863
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 713-352-1100
Fax: 713-352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

Richard J. (Rex) Burch
TX Bar No. 24001807
**BRUCKNER BURCH, PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Phone: 713-877-8788
Fax: 713-877-8065
rburch@brucknerburch.com

Jennifer L. McManus (P65976)
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067-0910
Phone: 248-542-6300
jmcmanus@faganlawpc.com
*Local Counsel for Plaintiff*

**ATTORNEYS FOR BELLENIR &
THE PATIENT CARE EMPLOYEES**